PAULA WEISBAUM *v.* STUART I. WEISBAUM
(2332)

HULL, DUPONT and BORDEN, Js.

Argued February 7—decision released July 10, 1984

*George B. Simoncelli, Jr.,* with whom, on the brief, was *Jess H. Smith,* for the appellant (plaintiff).

*Zbigniew S. Rozbicki,* for the appellee (defendant).

BORDEN, J. In this dissolution of marriage case the plaintiff wife appeals[1] claiming error in certain of the financial orders. The parties were married on Decem-

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

ber 17, 1966, and have two children, ages six and two, as of the date of the judgment. The court found the following facts. The plaintiff is a regular attendant at meetings of Alcoholics Anonymous. Most of the household unpleasantness was brought about by arguments relating to her drinking. She was reluctant to compromise, displaying instability and immaturity. The cause of the marital breakdown could not be attributed solely to either party. The husband recently inherited $50,000, which he placed in two equal custodial accounts for the benefit of the children, with himself as custodian, under the Uniform Gifts to Minors Act (UGMA), General Statutes §§ 45-101 through 45-109b.

The court issued the following financial orders which are involved in this appeal.[2] The defendant is to provide medical insurance for the benefit of the minor children; to pay any unreimbursed hospital, medical, dental, orthodontic and optical expenses of the children; and to continue his life insurance for their benefit until each reaches the age of majority. The plaintiff was given possession of the parties' house until the occurrence of various contingencies, the principal one being the youngest child's reaching the age of eighteen, at which time the property is to be sold and the net proceeds divided equally between the parties. During the plaintiff's occupancy of the house, the defendant is to pay the mortgage payments, taxes, insurance, utilities and nontoll telephone expenses.[3] The defendant is also to pay the plaintiff forty dollars per week for the support of each child. The court ordered that the defendant may pay from the children's custodial funds all the

[2] The record indicates that certain of the issues were either uncontested or agreed to at the trial. These are the dissolution of the marriage, custody and visitation, equal division of the parties' joint savings account after payment therefrom of certain outstanding medical and hospital bills, and the allocation of certain tangible personalty.

[3] The record indicates that at the trial the defendant indicated a willingness to continue bearing the expenses of the house.

medical and life insurance expenses; all the mortgage, taxes, insurance, utilities and telephone expenses; and the weekly support payments. The court declined the plaintiff's requests for periodic alimony and counsel fees.

I

We agree with the plaintiff's claim that the court abused its discretion in permitting invasion of the custodial funds for the purpose of discharging the defendant's support and other obligations under the judgment.

The gifts to the children under the UGMA were "irrevocable and convey[ed] to [them] indefeasibly vested legal title to the custodial property given . . . ." General Statutes § 45-103 (a). We note first that the court's order permitted invasion of these funds for the entire basic expenses of the house, even that portion attributable to shelter for the plaintiff. It is difficult for us to conceive of any basis on this record for such an invasion of these trust funds for that portion of the shelter expense. Such an invasion of children's property should be permitted, if at all, only under extreme circumstances indicating that it is necessary to the children's best interests to do so.

This leaves for consideration the invasion of the trust funds for expenses relating to the children. "The primary duty of the parent to support his minor children, if he is able to do so, is not relieved by the fact that they may have income from a trust created in their favor." *Fitzgerald* v. *Fitzgerald,* 169 Conn. 147, 152, 362 A.2d 889 (1975). Even where the parties agree to an invasion of custodial funds for the benefit of the children, that agreement is subject to the scrutiny of the court to see if it is in the best interests of the children. Id.

A parent has both a statutory and common law duty to support his minor children within the reasonable

limits of his ability. General Statutes § 46b-215; *Pezas v. Pezas,* 151 Conn. 611, 616, 201 A.2d 192 (1964). General Statutes § 46b-84 (a) provides in relevant part that upon dissolution of a marriage *"the parents* of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance." (Emphasis added.) General Statutes § 46b-84 (b) provides in relevant part that "[i]n determining whether a child is in need of maintenance and, if in need, the respective abilities of the *parents* to provide such maintenance and the amount thereof," the court shall consider, inter alia, the amount and sources of income of the child. (Emphasis added.) These latter two statutory sections reinforce in a dissolution action the basic principle that the primary duty of support of minor children, even those owning property, falls on their parents. The judgment here had the effect of permitting the defendant to shift that duty onto the shoulders of the very children whom he is obligated to support. Absent a finding of reasonable necessity for such a drastic dislocation, and absent a finding that it would be to the children's best interests to do so; see *Fitzgerald* v. *Fitzgerald,* supra; this was an abuse of discretion.

The defendant argues in effect that the order in question simply confirms what the defendant is permitted to do under General Statutes § 45-104 (b),[4] which is part of the UGMA. This argument misses the mark. The purpose of General Statutes § 45-104 (b) is to insulate the

[4] General Statutes § 45-104 (b) provides as follows: "The custodian shall pay over to the minor for expenditure by him, or expend for the minor's benefit, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor in the manner, at the time or times, and to the extent that the custodian in his discretion deems suitable and proper, with or without court order, with or without regard to the duty of himself or of any other person to support the minor or his ability to do so, and with or without regard to any other income or property of the minor which may be applicable or available for any such purpose."

custodian from claims, by the minor or by third parties dealing with the custodian, of improper management or unauthorized disbursements. Its purpose is not to control the exercise of the court's discretion in a marital dissolution case; nor is its purpose, in such a case, to discharge the parent's primary duty of support. It must be read together with the statutory and common law provisions regarding that duty. *In re Marriage of Wolfert,* 42 Colo. App. 433, 435–36, 598 P.2d 524 (1979). "The section does nothing to relieve a parent of the separate duty to support the children . . . . This interpretation is unavoidable in light of the fact that the gift is irrevocable and gives the children an 'indefeasible vested legal title' to the gift . . . ." Id. Furthermore, the record here indicates that at the trial the defendant agreed that the funds should be reserved for the benefit of the children and not used for his or the plaintiff's purposes.

The effect of the court's order here was to permit the defendant to discharge from the custodial funds those other obligations which the court imposed on him. It may be that upon a rehearing the court will impose the same obligations without the access to those funds; but on this record we cannot be certain of that. It is appropriate, therefore, that the rehearing which we order embrace those obligations as well.

## II

The plaintiff also argues that the court abused its discretion in declining to order the defendant to pay her any alimony. She had requested alimony of one dollar per year modifiable only in the event of physical incapacity to work. The court found that the cause of the marital breakdown could not be attributed solely to either party. The only evidence relating to physical incapacity to work was that in 1981 the plaintiff had her pancreas and gall bladder removed, from which she has

recovered. She has medical insurance coverage through her employment. She is a legal secretary, earning approximately $155 per week take-home pay. We cannot find an abuse of discretion in this aspect of the judgment.

For similar reasons, the order denying counsel fees must stand. The financial affidavits indicate that upon the division of the joint savings account the plaintiff will have approximately $1913. Neither those affidavits nor the plaintiff's brief indicates what she owes her attorneys, who are also her employers, for their services. The court attributed the breakdown to both parties, a factor to be considered in the award of counsel fees. *Arrigoni* v. *Arrigoni,* 184 Conn. 513, 440 A.2d 206 (1981). We find no abuse of discretion.

There is error in part, the judgment is set aside as to the orders relating to the custodial funds, support, medical and life insurance, unreimbursed medical, dental, orthodontic and optical expenses, and to mortgage, taxes, insurance, utilities and telephone expenses and the case is remanded for a rehearing limited to those issues.

In this opinion the other judges concurred.