MEMORANDUM OF DECISION
JANE W. FREEMAN, Judge.
The Petitioner, Rebecca Cloutier, has petitioned the Court to authorize the distribution of per capita funds from the trust of her minor child, A.C. The Mohegan Tribe of Indians of Connecticut (“Tribe”) has filed an Answer stating that it supports the Petition, in light of the circumstances of this case.
The Court has jurisdiction of the parties and the subject matter. The minor child, A.C., is a member of the Tribe (Pleading # 105) and the Tribe is a party to the proceeding. The Court has subject matter jurisdiction pursuant to The Gaming Revenue Allocation Plan, MTC SS 2-181-2-187 (the “Plan”). Under MTC § 2-183(h)(5) thereof, the Tribal Court may authorize the trustee or trustees of trusts established for minor children to make distributions to the parents or- guardians of the trust beneficiaries, for the purposes and subjeet to the limitations set forth therein.
*462 I. The Gaming Revenue Allocation Plan, MTC §§ 2-1M-2-1H7
As part of the Plan, the Tribe has made provisions for the future welfare of its minor tribal members by contributing their per capita benefits to grantor trusts owned by the Tribe “to be invested, with income on trust principal to be accumulated, for future distribution to those minor tribal members.” MTC § 2-1.81; Scott Quidgeon, Petitioner, In Re: T.T. and T.T. (Minor Children), 1 M.T.C.R 46, 6 Am. Tribal Law 456, 2006 WL 6177326 (2006). While the Plan states that the Tribe shall provide for the future welfare of its minor tribal members, tribal member parents are encouraged to pay for the immediate living needs of their children. MTC § 2-181. No distributions may be made from the grantor trusts until the minor is eighteen years old, except in limited extraordinary circumstances.
All assets accumulated in the grantor trusts for future distribution to a minor tribal member shall be distributed at such time as the minor reaches the age of eighteen (18) and not before, except hi the limited extraordinary circumstances provided in Subsection 2-183(h)(5) (emphasis added).
MTC § 2-181.
The limited extra,ordinary circumstances under which distributions may be made are as follows:
Prior to the time the beneficiary reaches the age of eighteen (18), the Tribal Court may, after careful consideration of he facts, authorize the trustee or trustees of the trust or trusts to make distributions from the trust or trusts to the parents or guardians of the beneficiary only to defray unreimbursed medical expenses or only as necessary to defray expenses for health, education, or welfare incurred by or on behalf of the beneficiary as established by such parents or guardians. Any request for such disbursements shall include a detailed budget of monies necessary for essential living expenses to include health, education, or welfare costs and only upon presentment of a detailed justification for such essential living needs. The petitioning parent or guardian must show, by a preponderance of the evidence, that the amount requested to defray unreim-bursed medical expenses or expenses for health, education or welfare, are reasonable and necessary. The Tribal Court may also require that the petitioning parent or guardian submit receipts of expenditures made from funds disbursed hereunder before any future disbursements are made (emphasis added).
MTC § 2—183(h)(5); see also Scott Quidgeon, Petitioner, In Re: T.T. and T.T. (Minor Children), 1 M.T.C.R. 47, 6 Am. Tribal Law 456, 2006 WL 6177326 (2006); Seidel v. Mohegan Tribe, 1 M.T.C.R 38, 39, 6 Am. Tribal Law 449, 2005 WL 6238704 (2005).
The Tribal Council has expressed a clear intent in the Ordinance to limit distributions from grantor trusts to extraordinary circumstances, where the amounts requested are reasonable and necessary. Further, the Tribal Court is limited to authorizing distributions from trust only where it has made a factual determination that the distributions are “necessary to defray expenses for health, education or welfare incmred by or on behalf of the beneficiary ....” MTC § 2—183(h)(5).
“Extraordinary circumstances” are “[a] highly unusual set of facts that are not commonly associated with a particular thing or event.” Black's Law Dictionary, 7th Ed. “Extraordinary’' has been defined as “going beyond what is usual, regular, common or customary ... exceptional to a very marked extent.” Webster’s *463 Third New International Dictionary. “Reasonable” has been defined as “being or remaining within the bounds of reason: not extreme: not excessive”. Id. “Necessary” has been defined as “that cannot be done without: that must be done or had: absolutely required”. Id.
Scott Quidyeon, Petitioner, In Re: T.T. and T.T. (Minor Children), 1 M.T.C.R. 46; Seidel v. Mohegan Tribe, 1 M.T.C.R. 38, 39-40, 6 Am. Tribal Law 449.
II. The Petition and the Facts
The Petitioner is the mother of the minor child, A.C. The Petitioner has requested a distribution from the minor’s trust in the amount of $45,000 to pay for an elevator and other modifications in order to make the family home accessible for the minor child.
A.C. is nine years old and has been diagnosed with Spinal Muscular Atrophy Type II which is a progressive neuromus-cular disorder. She uses a wheelchair for all of her mobility and positioning needs. In addition, the Petitioner uses a lift system to assist her in caring for the minor child. A.C.’s treating physicians and physical therapist indicate that home adaptations are needed to allow for the use of these medical devices; to improve her current quality of life; to provide a more accessible home so that she can be as independent as possible; and to allow her family to more safely care for her.
The Petitioner has contracted to sell her current home, which is slightly under 1200 square feet, because it could not be reasonably adapted to meet A.C.’s medical needs. The Petitioner has also contracted to purchase a new and larger home located on Kitemaug Road in Uncasville (“new home”). The new home is currently under construction; it will include interior and exterior modifications which are needed to allow for the use of A.C.’s wheelchair and to create a more independent living environment for her. When the Petitioner contracted to purchase her new house, construction had progressed to such a stage, that interior and exterior modifications had to be made by the contractor to finished work (“Contractor Modifications”), in order to meet A.C.’s medical needs. These modifications included changing several doorways to make them wheelchair accessible; adding a ramp in the rear of the house; building an elevator pit and shaft; and changing the first floor living room to a first floor bedroom and bath with wheelchair accessibility. The total cost of these Contractor Modifications is $12,975 (Plaintiffs Ex. 7). In addition, Petitioner plans to install an elevator from the basement garage to the first floor, so that A.C. will have wheelchair access to the house. The cost for the purchase of the elevator is $22,684 (Plaintiffs Ex. 6). Therefore, the total of these additional costs to make the new home accessible for the minor child is $35,659.
The Petitioner has requested financial assistance from the Tribe towards the cost of the elevator. She has been granted tribal financial assistance in the amount of $6,000 under the Tribe’s Special Needs Policy Program. Therefore, after the financial assistance from the Tribe, the Petitioner will need $29,659 to pay for the Contractor Modifications and the elevator.
The Petitioner has provided the Court with copies of the contracts for the sale of her current home and for the purchase of the new home. The Buyer of her current home has been pre-qualified for a mortgage and the Petitioner has received mortgage commitments for the purchase of the new home. While neither closing will occur until the end of June 2006, the Petitioner needs money to purchase the eleva *464 tor now, so that it can be installed in the new house before the closing date.
The Court finds that extraordinary circumstances exist in the present case due to the minor’s progressive neuromuscular disorder and the inability of the Petitioner to pay for the full costs of the home modifications from her own resources. A distribution from the minor’s trust is therefore warranted in order to defray the expenses, incurred or to be incurred by the Petitioner, for the minor’s health and welfare.
The Petitioner has already paid for the Contractor Modifications from her savings; however, she had earmarked these savings to pay for closing costs and other expenses associated with the move to a larger, more accessible home. She is requesting reimbursement from the minor’s trust for the sums already advanced by her. This Court may authorize distributions from trust to “defray expenses for health, education, or welfare incurred, by or on behalf of the beneficiary ...” MTC § 2—183(h)(5) (emphasis added). The Court therefore finds that it is appropriate, under these facts, to make provisions for reimbursement from the minor’s trust for the Con-tracto! Modifications. The Petitioner has not yet paid for the costs of the elevator and has also requested a distribution from the minor’s trust to pay for this cost. As noted above, the Tribe is providing financial assistance in the amount of $6,000 for the purchase of the elevator.
Any amounts distributed from the minor’s trust are subject to mandatory withholding for federal income taxes. While withholding for state income taxes is optional, the withholding rate is five (5%) percent of the gross distribution (Ex. C). The Court has therefore taken into account the withholding taxes (federal and state) in connection with the distribution ordered herein.
III. Conclusion
The Petitioner’s net cost for the Contractor Modifications and for the purchase of the elevator, after deducting the Tribe’s financial assistance, is $29,659 (“net cost”). The Court has determined that a gross distribution from the minor’s trust in the amount of $35,000, will result in a net distribution which will substantially reimburse the Petitioner for this net cost.
For the foregoing reasons, it is ordered that the gross sum of $35,000 be distributed to the Petitioner from the trust of A.C., and that the Tribe shall withhold from such distribution the required federal income tax withholding plus five (5%) percent of such gross sum for state income taxes. At the time of such distribution, the Tribe shall provide to the Clerk of the Court a statement indicating the gross and net sums distributed and the amounts of all federal and state withholding taxes.
It is further ordered, that upon closing of the Petitioner’s purchase of the new home, the Petitioner shall file with the Court the following documents: (1) a receipt showing full payment for the elevator; and (2) the HUD settlement statement(s) for the closing on the new home. In the unlikely event that the Petitioner does not close on the Purchase of her new home within six (6) months from the date of this decision, the full amount distributed from the minor’s trust shall be re-paid by the Petitioner to the minor’s trust.